# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Jessie Pickett,
      Petitioner,


      vs.                       Case No. 1:03cv200
                              (Spiegel, S.J.; Black, M.J.)


Wanza Jackson,
      Respondent.

---

## REPORT AND RECOMMENDATION

---

Petitioner, a prisoner in state custody at the Warren Correctional Institution in Lebanon, Ohio, brings this action *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition and respondent's "Answer/Return Of Writ," as well as the transcript of the state criminal trial proceedings. (*See* Docs. 1, 9, 10).


## Factual And Procedural Background

On July 19, 1999, petitioner was indicted by the Hamilton County, Ohio, grand jury on one count of murder in violation of Ohio Rev. Code § 2903.02(B); one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1); and one count of receiving stolen property in violation of Ohio Rev. Code § 2913.51(A). (Doc. 9, Ex. 1). On the State's motion, the receiving stolen property count was dismissed. (*Id.,* Ex. 2). After a jury trial, petitioner was found guilty on the remaining murder and felonious assault charges. (*See id.,* Ex. 3). On May 16, 2000, petitioner was sentenced to concurrent terms of imprisonment of fifteen (15) years to life for the murder offense and eight (8) years for the felonious assault offense. (*Id.*).

On May 29, 2000, petitioner's trial counsel filed a motion for acquittal or in the alternative for a new trial.  (*Id.,* Ex. 4).  The motion was denied on April 4, 2001.  (*Id.,* Ex. 5).

With the assistance of his trial counsel, petitioner thereafter filed a timely appeal to the Ohio Court of Appeals, First Appellate District, asserting among other claims the following assignments of error:

> **Third Assignment of Error:**  The trial court erred to the prejudice of defendant-appellant as he was denied his right to substantive due process by permitting his conviction for felony murder to be based upon an underlying felony, which is an offense included in fact in the homicide.

> **Fourth Assignment of Error:**  The trial court erred to the prejudice of defendant-appellant by failing to dismiss the case when the indictment was invalid on it[s] face as it failed to state an independent felony necessary to sustain a conviction for murder pursuant to R.C. 2903.02(B).

> **Fifth Assignment of Error:**  The trial court erred to the prejudice of defendant-appellant by precluding him from admitting evidence which was relevant to his claim of self-defense and the lesser offenses.

> **Sixth Assignment of Error:**  The trial court erred to the prejudice of defendant-appellant by allowing the arresting officer to testify that in her opinion defendant-appellant was under the influence of crack cocaine at the time of his arrest.

(*Id.*, Ex. 6).

On December 14, 2001, the Court of Appeals affirmed the trial court's judgment.  (*Id.,* Ex. 8).  In its Decision, the court made findings of fact,

which are presumed correct under 28 U.S.C. § 2254(e)(1),[1] regarding the incident leading up to and resulting in petitioner's conviction and sentence:

> On July 8, 1999, Pickett, who had recently returned to Cincinnati from Columbus, Ohio, drove around Cincinnati in a friend's rented car.  He stopped at a convenience store to purchase beer and cigarettes.  Sharon Peterson approached Pickett and asked if she could join him.  Although Pickett did not know her, he allowed her to accompany him.  He drove the red Chevrolet Cavalier to a location where she purchased crack cocaine.  They smoked the cocaine together and continued to drive around the Walnut Hills and Mt. Auburn neighborhoods of Cincinnati.  Peterson made a second crack-cocaine purchase, and the two eventually parked in Inwood Park around 4 p.m.
>
> After smoking the remaining cocaine, Peterson began to act oddly.  Pickett left the vehicle to sit on a nearby rock wall and drink beer.  He stated that "she got real mean for no reason."  Peterson threw the contents of the glove compartment and toiletry items kept in the rental car into the street.  She left the vehicle and screamed, "I am a certified nut."  Pickett claimed that he asked several unidentified passersby to call the police.
>
> Pickett returned to the car to look for the keys.  When he could not find them, in his own words, he "snapped."  He dragged the five-foot eight-inch Peterson from the car and began to fight.  Pickett claimed that Peterson tried to douse him in rubbing alcohol and set him on fire, and that she also tried to stab him with a "ramrod," a piece of coat hang[e]r used to clean crack pipes.  He insisted that he tried to avoid the fight and feared for his safety.  Nonetheless he admitted wrestling with her, throwing her to the ground and pinning her down.

---

[1]  28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence."  Upon review of the trial transcript, the Court concludes that the state court's factual findings quoted herein are reasonably supported by the record, and petitioner has not demonstrated by clear and convincing evidence that such findings are erroneous.

Paramedics responding to bystanders' emergency calls found Peterson's lifeless body.  Pickett was hugging a nearby tree, crying and yelling, "You bitch.  Why did you do that?  You took my life away."  During the fight, Peterson had been struck at least three times in the head by an object that caused great injury.  The blows were so severe that the skin on the left side of her head was torn from the underlying bone.  Peterson died from the blows.

Pickett picked up the paramedics' cardiac-monitoring unit, raised it over Peterson's corpse and yelled that Peterson "took his life."  Pickett released the monitor when ordered to do so by the paramedics.

When Cincinnati police officers arrived, Pickett was still cursing at Peterson.  Police did not find a ramrod at the crime scene.  They did find an empty bottle of rubbing alcohol but smelled no alcohol on Pickett.  Although he claimed that Peterson had attacked him, Pickett was uninjured.  Pickett made a number of inculpatory statements to the arresting and investigating officers.  None were recorded.

. . . .Throughout the investigation and trial, Pickett maintained that Peterson had "snapped" after smoking crack cocaine, had become violent, and had attacked him. Pickett, who weighed 250 pounds and was six-feet four-inches tall, claimed self-defense and that he had caused her death only in resisting her attack.  Pickett testified in his own defense. The trial court instructed the jury on the charged offenses, on the defense of self-defense, on the lesser-included offenses of voluntary and involuntary manslaughter, and aggravated assault and assault.  The jury returned guilty verdicts for murder and felonious assault. . . .

(*Id.,* pp. 2-4).

Assisted by his trial counsel, petitioner next sought leave to appeal to the Supreme Court of Ohio, asserting as propositions of law essentially the same claims that had been presented on direct appeal to the Ohio Court of Appeals.  (*Id.,* Ex. 9). On March 20, 2002, the Supreme Court of Ohio denied leave to appeal and dismissed the appeal "as not involving any substantial constitutional question."  (*Id.*, Ex. 11).

On March 20, 2003, the instant habeas corpus action commenced.  In the

4

petition, petitioner alleges the following grounds for relief:

> **Ground One:**  Petitioner's due process and equal protection rights were violated when Petitioner was convicted of felony-murder where the underlying felony directly resulted in, or was an integral part of, the homicide.

> **Ground Two:**   The trial court violated Petitioner's right to due process when it precluded him from introducing evidence relevant to his theory of self-defense ad to the lesser offenses.

> **Ground Three**: The trial court violated Petitioner's right to due process when it allowed a non-expert witness to state an opinion that was not rationally based on the perception of the witness or helpful to a clear understanding of his testimony or the determination of a fact in issue.

(Doc. 1, pp. 4-5).

The petition does not pose any statute of limitations issue because it was filed well within the applicable one-year limitations period set forth in 28 U.S.C. § 2244(d). Moreover, petitioner has exhausted all available state remedies with respect to his claims for relief.  Therefore, the Court will proceed to address each of petitioner's grounds for relief in light of the arguments asserted by respondent in the return of writ.


## OPINION

### A.  Petitioner Is Not Entitled To Relief Based On The Claim Alleged In Ground Three Because He Has Waived The Claim Of Constitutional Error And Any Claim Of State-Law Error Is Not Cognizable In This Proceeding

In Ground Three of the petition, petitioner alleges he was denied due process when the trial court allowed a non-expert police officer to testify over objection at trial that in her opinion petitioner "was under the influence of crack cocaine or some kind of stimulant."  (Doc. 1, p. 5).  In the return of writ, respondent argues that petitioner has waived this claim because he presented the issue to the state courts solely "as an error under state law, specifically Ohio Evidence Rule 701."  (Doc. 9, Brief, pp. 20-

21).  Respondent's argument has merit.

As an initial matter, the Court points out that it is precluded from reviewing petitioner's claim of state-law error that was raised on appeal to the Ohio Court of Appeals and the Supreme Court of Ohio.  A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law."  28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions").  Therefore, this federal court can only consider whether the alleged error violated petitioner's constitutional right to due process.  However, as respondent contends, it appears petitioner has waived any such constitutional claim because he failed to present it as a federal issue to the Ohio courts.

In recognition of the equal obligation of state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971).  If he fails to do so, he may have waived the unraised claims for purposes of federal habeas corpus review.  *See Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

If, because of a procedural default, a petitioner can no longer present his claims to a state court, he has waived them unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice."  *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

It is well-settled that in order to satisfy the "fair presentation" requirement, a habeas corpus petitioner must present both the factual and legal underpinnings of his claims to the state courts.  *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *cert. denied,* 532 U.S. 958 (2001); *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987).  This means the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *Franklin,* 811

6

F.2d at 325 (citing *Koontz v. Glossa,* 731 F.2d 365, 368 (6th Cir. 1984)); *see also Prather v. Rees,* 822 F.2d 1418 (6th Cir. 1987).  A claim will be considered "fairly presented" without citation to chapter and verse of the Constitution only if the presentation of the claim was "likely to alert the court to the claim's federal nature." *Nadworny v. Fair,* 872 F.2d 1093, 1097 (1st Cir. 1989) (quoting *Daye v. Attorney General of New York,* 696 F.2d 186, 192 (2nd Cir. 1982) (en banc)).

A set of four guidelines has been developed for determining whether a claim was presented in such a way as to alert the court of the claim's federal nature.  *Id.* Under these guidelines, a petitioner may fairly present to the state courts the constitutional nature of his claim by (1) relying on federal cases employing constitutional analysis; (2) relying on state cases employing constitutional analysis in similar factual contexts; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.  *McMeans,* 228 F.3d at 681; *Franklin,* 811 F.2d at 326 (quoting *Daye,* 696 F.2d at 193-94).

The use of a "generalized catch-all phrase," which merely alleges the denial of a fair trial under the United States Constitution, does not adequately alert the state courts of the constitutional nature of the claim where the "only legal theory presented to the state courts was predicated entirely upon state evidentiary law." *Franklin,* 811 F.2d at 326.  General statements that the petitioner was denied a "fair trial" and "due process" are not sufficient to put state courts on notice of a specific federal constitutional claim in the absence of citation to case law employing federal constitutional analysis.  *Petrucelli v. Coombe,* 735 F.2d 684, 688-89 (2nd Cir. 1984).

In this case, petitioner failed to fairly present to the Ohio courts the federal due process claim alleged in Ground Three of the petition.  In his briefs on appeal to the Ohio Court of Appeals and Supreme Court of Ohio, petitioner relied solely on Ohio R. Evid. 701, and argued only that the admission of the police officer's testimony "prejudice[d]" petitioner because such testimony failed to satisfy the requirements of Ohio's evidentiary rule.  (*See* Doc. 3, Ex. 6, pp. 15-17; Ex. 9, pp. 12-13).  Because the only legal theory presented was predicated entirely on state evidentiary law, petitioner failed to inform the Ohio appellate courts of a specific federal constitutional claim. *See Franklin,* 811 F.2d at 326; *cf. Petrucelli,* 735 F.2d at 688-90.

A state appellate court deciding whether a trial court committed prejudicial error in ruling on the admissibility of evidence under state law faces a different legal

7

question than a state court deciding whether the evidentiary ruling amounted to a constitutional due process violation.  *Petrucelli*, 735 F.2d at 690 (citing *Steele v. Taylor,* 684 F.2d 1193, 1206 (6th Cir. 1982), *cert. denied,* 460 U.S. 1053 (1983)).  Because the Ohio Court of Appeals was unaware of any constitutional claim, it addressed the issue as argued by petitioner, solely in terms of state law, and affirmed the trial court's judgment based on its state-law determination that "the testimony conformed to the requirements of Evid.R. 701, and the trial court did not abuse its sound discretion in permitting its admission."  (*See* Doc. 9, Ex. 8, p. 10).

By thus failing to fairly present the federal constitutional claim alleged in Ground Three of the petition to the Ohio courts, petitioner committed a procedural default.  He, therefore, has waived such claim for purposes of federal habeas corpus review unless he establishes cause for the default and actual prejudice as a result of the alleged error, or demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice."  *See Coleman,* 501 U.S. at 750; *see also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

Petitioner has not provided any justification as "cause" for his procedural default.  Moreover, he has not demonstrated that failure to consider the procedurally defaulted constitutional claim will result in a fundamental miscarriage of justice.

Accordingly, in sum, the undersigned concludes that petitioner is not entitled to habeas corpus relief based on the claim alleged in Ground Three of the petition challenging the trial court's evidentiary ruling allowing the police officer's opinion testimony because:  (1) to the extent petitioner alleges a violation of state law that was determined against him by the state courts, his claim is not cognizable in this federal habeas proceeding; and (2) the claim is waived to the extent petitioner alleges a federal due process violation.

### B.  Petitioner Is Not Entitled To Relief Based On His Claim Alleged In Ground One That His Felony Murder Conviction Predicated On The Felonious Assault Of The Victim Violated His Due Process and Equal Protection Rights

In Ground One of the petition, petitioner claims his felony murder conviction, which was based on the underlying felony of felonious assault, violated his constitutional rights to due process and equal protection because the State was freed "from having to prove the *mens rea* element of the murder."  (Doc. 1, p. 4).  This claim was presented to the Ohio appellate courts and thus is subject to review on the

merits.

The Ohio Court of Appeals, which was the only state court to issue a reasoned decision rejecting petitioner's claim of error on the merits, ruled in relevant part as follows:

> In his third and fourth assignments of error, Pickett contends that the trial court erred in failing to dismiss the felony-murder charge. He claims that the state had to prove a collateral felony, independent of the lethal act, to serve as the predicate offense for felony murder. But where the underlying offense supporting the murder was the felonious assault of the victim, Pickett claims that the state could obtain a conviction without "sufficient proof" of his intent to kill, thus depriving him of his substantive due-process rights guaranteed by the state and federal constitutions. . . .
>
> This argument has been rejected by other Ohio appellate courts. . . .
>
> The Ohio Supreme Court recently reiterated in *State v. Thompson* (2001), . . . 752 N.E.2d 276, 278-279, that legislation enjoys a strong presumption of constitutionality. That presumption remains unless the challenging party establishes beyond a reasonable doubt that the legislation is unconstitutional. See *id.* In *State v. Thompkins* (1996), . . . 664 N.E.2d 926, 928-929, the court also stated that the General Assembly has the authority to define criminal conduct and to determine the appropriate punishment. Laws enacted pursuant to this authority are valid "if they bear a real and substantial relation to the object sought to be obtained, namely the health, safety, or general welfare of the public, and are not arbitrary, discriminatory, capricious or unreasonable. *** The federal test is similar. To determine whether such statutes are constitutional under federal scrutiny, we must decide if there is a rational relationship between the statute and its purpose."  See *id.*
> The jury found Pickett guilty of causing Peterson's death as a proximate result of committing felonious assault. R.C. 2903.02(B), effective June 30, 1998, provides,
>
> > No person shall cause the death of another as a proximate result of the offender's committing or

9

attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.

Felonious assault is defined in R.C. 2903.11(A)(1), which states that "[n]o person shall knowingly *** [c]ause serious physical harm to another ***." R.C. 2903.11(A)(9) defines felonious assault as an offense of violence. It is punishable as a second-degree felony pursuant to R.C. 2903.11.

The General Assembly has thus narrowly defined the scope of felony murder under R.C. 2903.02(B), and related it to the legitimate purpose of punishing the taking of human life while committing a separate crime of violence. Only eleven first-and second-degree offenses may serve as predicate offenses under this statute. Voluntary and involuntary manslaughter may not. Moreover, the statute does not arbitrarily relieve the state of proving criminal intent, nor does it eliminate the role of the jury as the trier of fact. . . . As the Eleventh Appellate District has noted in *State v. Hayden,* [No. 99-L-037, 2000 WL 973413 (Ohio Ct. App. July 14, 2000) (unpublished), *appeal dismissed,* 747 N.E.2d 249 (Ohio 2001),] the state must still prove the culpable-mental-state element by proving the intent of the predicate felony. Here, the jury was required to determine if the state had proved beyond a reasonable doubt that Picket "knowingly" caused serious physical harm to Peterson. Therefore, we agree with the Eighth, Ninth and Eleventh Appellate Districts and hold that Pickett's conviction under the felony-murder rule of R.C. 2309.02(B), where the predicate offense was the felonious assault of the murder victim, did not deprive him of due process. . . .

(Doc. 9, Ex. 8, pp. 4-6) (some state case citations omitted).

Under the applicable standard of review set forth in 28 U.S.C. § 2254(d), petitioner is not entitled to relief in this federal habeas corpus proceeding unless the state court's adjudication of his sufficiency of evidence claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was

based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942.

An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.  *Williams,* 529 U.S. at 407-08 (O'Connor, J.).  Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 411 (O'Connor, J.); *see also McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942.

The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable.  *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43.  Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision."  *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

In this case, as the Ohio Court of Appeals recognized, petitioner is challenging the constitutionality of Ohio's felony-murder statute, which came into effect on June

30, 1998, to the extent the statute permitted his prosecution and conviction for felony murder based on the underlying felony of felonious assault.  In essence, petitioner contends that the statute effectively eliminates the intent element normally required to establish the offense of murder by permitting a murder conviction based only on proof of the less culpable mental state required to establish the predicate felonious assault offense.

The Supreme Court has long recognized that judicial restraint must be exercised in considering claims challenging the constitutionality of state criminal statutes.  *See, e.g., Schad v. Arizona,* 501 U.S. 624, 638 (1991) (plurality opinion); *Martin v. Ohio,* 480 U.S. 228, 232 (1987); *McMillan v. Pennsylvania,* 477 U.S. 79, 85 (1986); *Patterson v. New York,* 432 U.S. 200, 201 (1977).  In *Patterson,* the Supreme Court emphasized:

> It goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government, *Irvine v. California,* 347 U.S. 128, 134 . . . (1954) (plurality opinion), and that we should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States.  Among, other things, it is normally "within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion," and its decision in this regard is not subject to proscription under the Due Process Clause unless "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."

*Patterson,* 432 U.S. at 201-02 (quoting *Speiser v. Randall,* 357 U.S. 513, 523 (1958); *Leland v. Oregon,* 343 U.S. 790, 798 (1952); *Snyder v. Massachusetts,* 291 U.S. 97 105 (1934)).

The Supreme Court has not addressed the exact issue presented here.  However, this Court finds instructive the Supreme Court's decisions in "burden shifting" cases, where states "defined an offense in such a way as to exclude some particular fact from those to be proved beyond a reasonable doubt," and most recently in *Schad,* where the state supreme court decided that premeditation and the commission of a felony are not independent elements of the state crime of capital first-degree murder, but rather are "mere means of satisfying the *mens rea* element" of the offense.  *Cf. Schad,* 501 U.S.

at 638-39.  As the Court in *Schad* pointed out, there is a similarity among the cases to the extent that in all these cases, including the case-at-hand, petitioner "argues that the inherent nature of the offense charged requires the State to prove as an element of the offense some fact that is not an element under the legislative definition."  *Id.* at 639 (plurality opinion).

In *Schad*, Justice Souter writing for the plurality, stated:

In the burden-shifting cases, as here, we have faced the difficulty of deciding, as an abstract matter, what elements an offense must comprise.  Recognizing "[o]ur inability to lay down any 'bright-line' test," *McMillan,* 477 U.S. at 91, . . . we have "stressed that . . . the state legislature's definition of the elements of the offense is usually dispositive."  *Id.* at 85. . . .

*Schad,* 501 U.S. at 639.  Recognizing that "there are obviously constitutional limits beyond which the States may not go," *see, e.g., Patterson,* 432 U.S. at 210, the plurality went on to uphold the State's decision by referring "both to history and to the current practice of other States in determining whether [the] State ha[d] exceeded its discretion in defining offenses."  *Schad,* 501 U.S. at 640.[2]  The Court reasoned:

Where a State's particular way of a defining a crime has a long history, or is in widespread use, it is unlikely that a defendant will be able to demonstrate that the State has shifted the burden of proof as to what is an inherent element of the offense, or has defined as a single crime multiple offenses that are inherently separate.  Conversely, a freakish definition of the elements of a crime that has no analogue in history or in the criminal law of other jurisdictions will lighten the defendant's burden.

*Id.* (footnote omitted).

_____

[2] In his concurring opinion, Justice Scalia concurred in the plurality's judgment, but disagreed with a statement contained in the plurality opinion, *see Schad,* 501 U.S. at 642-43 (plurality opinion), to the effect that although "history and current practice are significant indicators of what we as a people regard as fundamentally fair and rational ways of defining criminal offenses," they are not necessarily dispositive of the constitutional issue.  *Schad,* 501 U.S. 650-52 (Scalia, J., concurring in part and concurring in judgment).  In Justice Scalia's opinion, "historical practices" alone defined the process that was "due."  *Id.*

Of particular relevance to the case-at-hand, the Supreme Court found that the state's "equation of the mental states of premeditated murder and felony murder as species of blameworthy state of mind required to prove a single offense of first-degree murder finds substantial historical and contemporary echoes." *Id.* In so finding, the Court reasoned in pertinent part:

> At common law, murder was defined as the unlawful killing of another human being with "malice aforethought." The intent to kill and the intent to commit a felony were alternative aspects of the single concept of "malice aforethought." . . . Although American jurisdictions have modified the common law by legislation classifying murder by degrees, the resulting statutes have in most cases retained premeditated murder and some form of felony murder . . . as alternative means of satisfying the mental state that first-degree murder presupposes.

*Id.* at 640-41.

In addition, in *Schad,* the Supreme Court expressly refused to consider the question "whether premeditated murder is necessarily the *moral* equivalent of felony murder in all possible instances of the latter." *Id.* at 643 (emphasis added). In the plurality opinion, Justice Souter stated: "Whether or not everyone would agree that the mental state that precipitates death in the course of robbery is the moral equivalent of premeditation, it is clear that such equivalence could reasonably be found, which is enough to rule out the argument that this moral disparity bars treating them as alternative means to satisfy the mental element of a single offense." *Id.* at 644.

In light of *Schad* and other instructive Supreme Court precedents, this Court concludes that Ohio's felony murder statute permitting a murder conviction based on proof that the defendant committed the predicate felonious assault offense comports with due process. Indeed, even more recently, in *Hopkins v. Reeves,* 524 U.S. 88, 91-92, 100 (1998), the Supreme Court did not express any concerns about the constitutionality of petitioner's first-degree, felony-murder conviction under an analogous state statute that permitted a murder conviction for a death that occurred during the perpetration of a sexual assault or attempted sexual assault. In that case, the Court summarily stated that in proceeding under such a theory, the State was not required "to prove a culpable mental state with respect to murder because intent to kill is conclusively presumed if the State proves intent to commit the underlying felony."

14

*Id.* at 91-92.  The Court also expressly rejected the lower court's determination that certain Supreme Court decisions in capital cases must be read as "requiring the States to alter their definitions of felony murder to include a *mens rea* requirement with respect to the killing."  *Id.* at 99-100.  The Court reasoned that proof of a sufficiently culpable mental state before the death penalty could be imposed at sentencing was not necessary to establish the felony murder offense at the guilt-phase of the trial.  *Id.*

Apparently relying on a "merger doctrine" recognized in other states, where only crimes that are independent of the homicide can serve as predicate offenses for felony murder, petitioner contends that his constitutional rights were violated because the underlying felonious assault was an "integral part" of the homicide.  (*See* Doc. 1, p. 4).  *Cf. Orellana v. Castro,* No. C 00-2466 SI (PR), 2001 WL 590006, at *2-3 (N.D. Cal. May 23, 2001) (unpublished) (in California, a person cannot be convicted of felony murder "where the underlying felony merges into the murder, such as is the case where the underlying felony is a felonious assault").

By enacting a statute permitting a felony murder conviction based on the underlying predicate offense of felonious assault, Ohio has declined to adopt the merger doctrine.  *Cf. State v. Collins,* No. 2003-CA-0073, 2005 WL 774010, at *16 (Ohio Ct. App. Apr. 5, 2005) (unpublished); *State v. Cherry,* No. 20771, 2002 WL 1626105, at *4 (Ohio Ct. App. July 24, 2002) (unpublished), *appeal dismissed,* 780 N.E.2d 287 (Ohio 2002); *State v. Hayden,* No. 99-L-037, 2000 WL 973413, at *4 (Ohio Ct. App. July 14, 2000) (unpublished), *appeal dismissed,* 747 N.E.2d 249 (Ohio 2001).

The few federal courts that have addressed the issue have refused to find that the merger doctrine is constitutionally required.  *See, e.g., Ragland v. Hundley,* 79 F.3d 702, 705 (8th Cir.), *cert. denied,* 519 U.S. 850 (1996); *Heaton v. Nix,* 924 F.2d 130, 134 (8th Cir.), *cert. denied,* 500 U.S. 956 (1991); *Armstrong v. Blodgett,* 967 F.2d 583 (table), No. 90-35581, 1992 WL 132997 (9th Cir. June 15, 1992) (unpublished).

In *Ragland,* the court noted that the merger doctrine was adopted in some states "to avoid the prosecution's bootstrapping a simple homicide to a higher degree of murder without showing the requisite intent."  *Ragland,* 79 F.3d at 705 n.4.  The court went on to find that although Iowa declined to incorporate the doctrine in its felony-murder statute, its "scheme . . . avoids any serious bootstrapping concerns by permitting felony-murder charges to lie only when the killing in issue is a . . . killing

with malice aforethought." *Id.*

The Ohio scheme, specifically excluding manslaughter offenses and only permitting eleven first- and second-degree violent felonies to serve as predicate offenses, similarly eliminates any concerns about boot-strapping.

Accordingly, in sum, the undersigned concludes that the state appellate court's decision upholding the constitutionality of Ohio's felony-murder statute comports with, and is reasonable in light of, applicable Supreme Court precedents.

Petitioner is not entitled to habeas corpus relief based on his claim alleged in Ground One of the petition that his felony murder conviction predicated on the felonious assault of the victim violated his rights under the Fourteenth Amendment to due process and equal protection.

### C.  Petitioner Is Not Entitled To Habeas Relief Based On His Claim Alleged In Ground Two That The Exclusion Of Certain Evidence At Trial Violated His Due Process Right To Present Evidence In His Defense

In Ground Two of the petition, petitioner alleges he was denied due process when the trial court precluded him from introducing evidence at trial supporting his defense of self-defense and the lesser offenses of manslaughter.  (Doc. 1, p. 4).

As an initial matter, it appears this claim was raised only as a state-law evidentiary issue on direct appeal to the Ohio courts, and thus a strong argument can be made that, like Ground Three of the petition, the cognizable federal claim is subject to dismissal on waiver grounds, *see supra* pp. 5-8.  (*See also* Doc. 9, Ex. 6, pp. 12-15; Ex. 9, pp. 10-12).  However, because respondent did not assert a waiver defense with respect to this claim (*see* Doc. 9, Brief, pp. 17-20), the Court will address the merits of the constitutional issue presented here.

As the only state court to provide a reasoned decision rejecting petitioner's state-law claim on the merits, the Ohio Court of Appeals made findings of fact, which are presumed correct, *see supra* p. 3 n.2, and ruled in relevant part as follows:

> In his fifth assignment of error, Pickett contends that the trial court erred in excluding, over objection, the testimony of S[o]ndra [C]raft, a

16

registered nurse who would have testified from her records that the victim made statements while at Talbert House that she had planned to "act crazy with boys on the street so they would kill me." Pickett claims that this testimony would have aided the jury in concluding that Peterson was the aggressor and likely provoked a violent response from Pickett when he killed her.

The trial court excluded the proffered testimony on three grounds. First, as the statements were evidence of character, see Evid.R. 404(A)(2), they were inadmissible "unless [the evidence of character was] known to the defendant who is advancing a self-defense theory." Pickett did not know of Peterson's propensity. Second, the court concluded that the notes did not "contain a specific instance of conduct" and thus were not one of the approved methods of proving the victim's character. See Evid.R. 405(B). Third, the trial court excluded the testimony because Peterson's statements were nearly two years old and too far removed in time to be admitted.

****

Nearly one month after the trial court's ruling to exclude the [C]raft evidence, this court released *State v. Wetherall* (June 22, 2001), Hamilton App. No. C-000113, unreported. The first two of the trial court's reasons were erroneous in light of that decision. We note that *State v. Wetherall* is now under review by the Ohio Supreme Court pursuant to an order certifying a conflict among the appellate districts. See *State v. Wetherall* (2001), . . . 755 N.E.2d 354. Until a resolution of the conflict, however, this court is obligated to follow its own precedent. Therefore, we apply *State v. Wetherall* and hold that the trial court erred by excluding testimony concerning Peterson's propensity for violence, when that character evidence was probative of whether the victim was the aggressor, an essential element of Pickett's claim of self-defense.

Nonetheless, the trial court's third reason provided an independent ground for excluding the testimony. While all evidence having any tendency to make any consequential fact more or less probable is relevant and admissible unless otherwise prohibited, see Evid.R. 401 and 402, the

17

trial court retains discretionary authority to exclude even relevant evidence if that evidence would confuse the issues at trial. . . . We hold that the trial court did not abuse its discretion in excluding otherwise relevant evidence when its conclusion that the temporal separation between the victim's statement and her later conduct substantially limited its probative value. The trial court exhibited in this respect a sound reasoning process that supported its decision. This court will not disturb that determination, even if we may not have resolved the issue in the same manner. . . .

(Doc. 9, Ex. 8, pp. 6-9) (state case citations omitted).

In a case such as this, where the state appellate court addressed petitioner claim of error solely in terms of state law, the deferential standard of review set forth in 28 U.S.C. § 2254(d), *see supra* pp. 10-11, is inapplicable. By its terms, this provision only applies to claims that were "adjudicated on the merits in State court proceedings." *Clinkscale v. Carter,* 375 F.3d 430, 436 (6th Cir. 2004) (citing *Maples v. Stegall,* 340 F.3d 433, 436 (6th Cir. 2003)), *cert. denied,* 125 S.Ct. 1316 (2005).

Because the state court did not consider the federal constitutional due process issue raised by petitioner in his habeas corpus petition, this Court must conduct a *de novo* review of the claim instead of applying the deferential standard of review set forth in § 2254(d). *See id.*; *Maples,* 340 F.3d at 436-37 (pointing out that in *Wiggins v. Smith,* 539 U.S. 510 (2003), the Supreme Court reviewed the portion of the claim not analyzed by the state court *de novo*, without deferring to the state court or applying § 2254(d)'s standard of reasonableness); *see also Towns v. Smith,* 395 F.3d 251, 257 (6th Cir. 2005); *Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003).

The Sixth Amendment's Compulsory Process Clause guarantees the right of a criminal defendant to present witnesses in his favor, and is applicable to the states through the Fourteenth Amendment's Due Process Clause. *Washington v. Texas,* 388 U.S. 14, 17-19 (1967); *see also Taylor v. Illinois,* 484 U.S. 400, 408 (1988). However, a defendant's compulsory process right is not absolute. The Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system; the defendant must comply, like the prosecution, with established rules of procedure and evidence to ensure both fairness and reliability in the ascertainment of guilt or innocence. *Taylor,* 484 U.S. at 410-11 & n.15, 412-13

18

(quoting *United States v. Nobles,* 422 U.S. 225, 241 (1975)); *see also United States v. Scheffer,* 523 U.S. 303, 308 (1998); *Chambers v. Mississippi,* 410 U.S. 284, 302 (1973).

Because the compulsory process right is "balanced against a court's leave to set reasonable limits on the admission of evidence[,] . . . judges are accorded 'wide latitude' in excluding evidence that poses an undue risk of 'harassment, prejudice [or] confusion of the issues' or evidence that is 'repetitive or only marginally relevant.'" *United States v. Blum,* 62 F.3d 63, 67 (2nd Cir. 1995) (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)). Therefore, in a federal direct review proceeding, the trial court's evidentiary ruling is reviewed under an abuse of discretion standard. *Id.*

In a proceeding such as this, involving federal collateral review of a state conviction, the trial court's ruling on the admission or exclusion of evidence under state law generally may not be questioned unless the ruling rendered the trial so fundamentally unfair as to amount to a denial of due process. *See, e.g., Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir. 1988); *Walker v. Engle,* 703 F.2d 959, 962 (6th Cir.), *cert. denied,* 464 U.S. 951 (1983); *Logan v. Marshall*, 680 F.2d 1121, 1123 (6th Cir. 1982); *Bell v. Arn,* 536 F.2d 123, 125 (6th Cir. 1976).

In a case involving a claim of ordinary trial error where no specific constitutional guarantee is implicated, the alleged error does not amount to a fair trial violation unless when viewed in the context of the entire record it is found to have "tilted the scales in favor of a guilty verdict" or was "so egregious as to have nullified the legitimacy of the properly admitted substantive evidence of guilt." *Lundy v. Campbell*, 888 F.2d 467, 473 (6th Cir. 1989), *cert. denied,* 495 U.S. 950 (1990); *Webster v. Rees,* 729 F.2d 1078, 1081 (6th Cir. 1984); *see also Walker,* 703 F.2d at 968.

In any event, whether or not petitioner's right to present a defense is characterized as a general right to a fair trial rooted directly in the Fourteenth Amendment's Due Process Clause or as a specific constitutional right guaranteed by the Sixth Amendment's Compulsory Process Clause, if it is determined that petitioner's constitutional rights were infringed by the exclusion of Sondra Craft's testimony in this case, the trial court's ruling is subject to "harmless error" analysis.

*See Blum,* 62 F.3d at 68 (citing *Crane v. Kentucky,* 476 U.S. 683, 691 (1986)).

This means that petitioner is not entitled to habeas corpus relief unless the alleged constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict." *See, e.g., Calderon v. Coleman,* 525 U.S. 141, 145-47 (1998); *O'Neal v. McAninch,* 513 U.S. 432, 435-36 (1995); *see also Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993) (applying standard of review enunciated in *Kotteakos v. United States,* 328 U.S. 750 (1946), a federal direct review case, to federal collateral review proceeding under 28 U.S.C. § 2254).

Under this "harmless error" standard, if upon review of the entire record, the court is convinced that "the error did not influence the jury, or had but slight effect," the conviction must stand. *O'Neal,* 513 U.S. at 436-38; *Kotteakos,* 328 U.S. at 764. On the other hand, if the court "is left in grave doubt" and "cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error," the court must find that the error had a substantial influence on the jury and the conviction cannot stand. *O'Neal,* 513 U.S. at 436-38; *Kotteakos,* 328 U.S. at 765.

In this case, the Ohio Court of Appeals determined that the trial court's discretionary decision to exclude Sondra Craft's testimony did not amount to error under state law because the court reasonably found that the excluded evidence was

"too far removed in time" to be of significant probative value.[3]

This Court agrees with and, in any event, defers to and is bound by the Ohio court's state-law determination. *See e.g., Gimotty v. Elo,* 40 Fed.Appx. 29, 32 (6th Cir. Apr. 25, 2002) (not published in Federal Reporter) (citing *Davis v. Strack,* 270 F.3d 111, 123 n.4 (2nd Cir. 2001)), *cert. denied,* 537 U.S. 894 (2002); *Johnson v. Rosemeyer,* 117 F.3d 104, 108 (3rd Cir. 1997); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Warner v. Zent,* 997 F.2d 116, 133 (6th Cir. 1993) (absent a showing of "extreme circumstances where it appears that the [state court's] interpretation of [state law] is an obvious subterfuge to evade consideration of a federal issue," the federal habeas court is bound by the state court's determination of state law) (quoting *Mullaney v. Wilbur,* 421 U.S. 684, 690-91 (1975)), *cert. denied,* 510 U.S. 1073 (1994).

Even assuming, *arguendo,* that Craft's proffered testimony regarding the victim's statements to her should have been admitted into evidence, the trial court's ruling amounted to "harmless error."

Three police officers separately testified about inculpatory statements petitioner made to them soon after the victim was killed regarding the sequence of events which resulted in her death. The police officers' testimony constitutes strong evidence that petitioner was the initial aggressor after he "snapped" in response to the victim's

---

[3] It is noted that the court also found that the two other reasons given by the trial court for excluding the evidence were improper under state law. At that time, the state decision relied on by the appeals court–*State v. Wetherall,* Case No. C-000113, 2001 WL 705572 (Ohio Ct. App. June 22, 2001) (unpublished)–was pending before the Supreme Court of Ohio for review. Subsequently, on January 9, 2002, the Supreme Court of Ohio vacated the *Wetherall* decision and remanded the matter to the court of appeals for consideration in light of its decision that day in *State v. Barnes,* 759 N.E.2d 1240 (Ohio 2002). *State v. Wetherall,* 759 N.E.2d 1251 (Ohio 2002). In *Barnes,* 759 N.E.2d at 1245, the state supreme court held that "a defendant asserting self-defense cannot introduce evidence of specific instances of a victim's conduct to prove that the victim was the initial aggressor." Although on remand the Ohio Court of Appeals upheld its initial decision in *Wetherall* by distinguishing *Barnes* on the facts, *see State v. Wetherall,* No. C-000113, 2002 WL 440700 (Ohio Ct. App. Mar. 22, 2002) (unpublished), the Supreme Court of Ohio's *Barnes* decision does cast doubt on the Ohio Court of Appeals' state-law determination in this case.

21

"crazy," but non-aggressive, behavior of screaming and/or throwing items from the car out onto the street. (Tr. 113, 137-38, 273-75). The coroner who examined the victim provided further support for the State's position by testifying at trial that the severe injuries to the victim's head were made by a "very directed, forceful blow" or blows, and that "it's probably unlikely" they were incurred during a struggle involving "wrestling and falling." (Tr. 153-54, 161-62).

At trial, petitioner testified that the victim instigated the attack by throwing alcohol on him and trying to set him on fire with a lighter. (Tr. 212-13). Later, however, he undermined his own testimony by stating that these actions by the victim did not provoke him to fight with her because he walked away from her at that time. (Tr. 249). According to petitioner's testimony at trial, it was when the victim later started attacking him with a wire coat hanger, that he began wrestling her in self-defense. (Tr. 255). He also testified that the victim died as a result of his only "sl[inging her] down to the ground . . . [o]ne time." (Tr. 257). However, this testimony contradicting key aspects of petitioner's earlier statements to the police was further undermined by evidence presented at trial that petitioner was substantially larger than the victim in both height and weight and that the police neither found a hanger at the scene nor observed any injuries on petitioner immediately after his alleged struggle with the victim occurred. (Tr. 86, 115, 254-56). Petitioner also failed to explain how the victim received severe injuries on all three sides of her head simply by his throwing her one time to the ground without ever "hit[ting] her with anything." (Tr. 257-58).

In light of the substantial evidence of guilt regarding the events that occurred on July 8, 1999 which led to the victim's death, it is highly unlikely that the victim's sole statement to Craft two years earlier indicating she was "suicidal" and had "a plan to 'act crazy with boys on the street so they would kill me,'" would have had more than a minimal effect on the jury's verdict with respect to petitioner's claim of self-defense and the lesser offenses of manslaughter.

Accordingly, in sum, the undersigned concludes that petitioner has not demonstrated the trial court's ruling excluding Sondra Craft's testimony violated his due process right to present evidence in his defense. In any event, any error in excluding the evidence was harmless because it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *See Brecht,* 507 U.S. at 637.

22

**IT IS THEREFORE RECOMMENDED THAT:**

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be DENIED with prejudice.

2. A certificate of appealability should not issue with respect to the claim alleged in Ground Three of the petition, which this Court has concluded is waived and thus barred from review on procedural grounds, because "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling." *See Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000).[4] On consideration of petitioner's remaining claims addressed on the merits by this Court, which are not subject to review under the two-part *Slack* standard governing procedurally-defaulted claims, a certificate of appealability should issue only with respect to petitioner's claim alleged in Ground One challenging the constitutionality of petitioner's felony-murder conviction based on the underlying offense of felonious assault; a certificate of appealability should not issue with respect to petitioner's constitutional claim alleged in Ground Two challenging an evidentiary ruling by the state trial court, because petitioner has failed to make a substantial showing of the denial of a constitutional right in that ground for relief. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would be taken in "good faith," and therefore GRANT petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

---

[4] Because this Court finds that the first prong of the two-part *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim for relief in Ground Three of the petition. *See Slack*, 529 U.S. at 484.

Respectfully submitted,


Date:  9/7/05                              s/Timothy S. Black
        cbc                             Timothy S. Black
                                        United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

Jessie Pickett
     Petitioner,

                                  Case No. 1:03cv200
       v.                       (Spiegel, S.J.; Black, M.J.)

Wanza Jackson,
     Respondent.

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).